```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3            Case No. 12-CR-10020-MARTINEZ/SNOW

 4
     UNITED STATES OF AMERICA,
 5

 6            Plaintiff,
                                          KEY WEST, FLORIDA
 7   vs.                                  APRIL 12, 2013

 8
     AMMON COVINO,
 9   CHRISTOPHER CONK,
     et al.,
10
11            Defendants.
     ------------------------------------------------------------
12
         TRANSCRIPT OF INITIAL APPEARANCE & ARRIGNMENT HEARING
13              BEFORE THE HONORABLE LURANA S. SNOW,
                   UNITED STATES MAGISTRATE JUDGE
14
     APPEARANCES:
15
     FOR THE GOVERNMENT:
16
                                 UNITED STATES ATTORNEY'S OFFICE
17                               99 N.E. 4th Street
                                 Miami, Florida 32502
18                               BY: ALEX SOTO, A.U.S.A.

19   FOR THE DEFENDANT COVINO:

20                               LYONS & SANDERS
                                 1301 E. Broward Boulevard
21                               Suite 220
                                 Fort Lauderdale, Florida 33301
22                               BY: BRUCE M. LYONS, ESQ.

23   REPORTED BY:                JERALD M. MEYERS, RPR.
                                 1601 N.W. 109th Terrace
24                               Pembroke Pines, Florida
                                 Telephone: 954-431-4757
25                               E-mail Address: CRJM@AOL.COM
```

1  (Call to order of the court)
2          THE CLERK:  Court is now in session.
3          THE COURT:  All right.  Please be seated everyone.
4          Calling case number 12-10020-Criminal-Martinez, United
5  States of America versus Ammon Covino.
6          May I have counsel's appearances, please.
7          MR. SOTO:  Good afternoon, Your Honor.  Alex Soto on
8  behalf of the United States.  I am standing in for AUSA Tom
9  Watts-Fitzgerald.
10         MR. LYONS:  Your Honor, Bruce Lyons.  I represent
11 Ammon Covino who is to my left.
12         THE COURT:  Is this a temporary or a permanent
13 appearance?
14         MR. LYONS:  A permanent appearance, Your Honor.
15         THE COURT:  All right.  Mr. Covino, you are here for
16 an initial appearance in this district on an indictment that
17 has been returned against you.
18         It charges you with conspiracy to violate the Lacey
19 Act.  Counts II and III deal with sale and purchase of species
20 that apparently were illegally harvested.
21         Count IV is also a sale and purchase count.
22         You have a right to an attorney to represent you at
23 all stages of the proceedings, and Mr. Lyons has entered a
24 permanent appearance, so we do not need to address that issue.
25         Well, are we going to arraign him here today?  Let's

1 do that and then we will take up the bond issue.

2 MR. LYONS: That is fine.

3 Your Honor, the defendant has seen the return of the
4 indictment, and I have gone over it with him, and we will enter
5 a plea of not guilty to all of the counts as set forth in the
6 indictment and request a trial by jury and the standing of
7 order of discovery.

8 I can inform the court that the matter is now
9 scheduled for trial before Judge Martinez on September 23rd,
10 along with there is another defendant in this case, Christopher
11 Conk.

12 In addition, Your Honor, there was a standing order of
13 discovery. I received one of the disks on this matter
14 referenced in the physical evidence.

15 We have not received the disk regarding the taped
16 conversations from C.I. 1 and 2. Mr. Fitzgerald indicates he
17 will get that to us.

18 THE COURT: Okay. All right. And he has I think it
19 is 14 days under the standing discovery order. So a not guilty
20 plea will be entered into the record, as well as a demand for
21 jury trial. The standing discovery order will be issued today,
22 and further proceedings will be before Judge Martinez.

23 Now, what happened in the other district is the
24 defendant was released on bond. There was a motion to revoke
25 the bond.

1           The District Judge, or excuse me, the magistrate judge
2  I guess up there conducted a hearing on that, and the defendant
3  was pretrial detained.
4           So at least technically a motion for bond is a
5  non-entity.  What you have to do is appeal the detention order
6  to the District Judge who may or may not refer that to me.
7           However, if the parties have worked out a bond, I
8  would certainly consider it at this point.
9           MR. LYONS:  Your Honor, with all due respect, the
10 prosecutor standing in wanted to know what I wanted.  I wished
11 I had the opportunity to talk to Mr. Fitzgerald before, but he
12 was in trial.
13          In all candor, I indicated my client would agree to
14 any conditions of bond, and I don't think counsel indicated
15 what the government would want, and so if the court wishes, I
16 will be happy to discuss it again with counsel.
17          If counsel has a suggestion, I have no problem
18 listening to what, if anything.  If he indicates that it is his
19 desire to pretrial detain the defendant or continue without
20 setting a bond, then I guess I will have to appeal the
21 magistrate's order.
22          Now, the magistrate in Boise, thinking that the
23 defendant would have been transferred within 3 days, because
24 there was a hearing here, at that time granted a pretrial
25 detention order.

1         The defendant has been in custody since February 24th
2 or 23rd and has just arrived here in Florida the day before
3 yesterday.
4         THE COURT: How do we with know the judge thought he
5 was going to be transferred in 3 days?
6         MR. LYONS: That's what the lawyer who represented him
7 indicated. It wasn't an original court date for the
8 arraignment prior, and the other defendants were arraigned on
9 that day.
10         When the motion to revoke happened, obviously he got
11 stuck in Boise and then transferred by the Frickin Train to
12 different locations. The other defendants were arraigned on
13 that date.
14         THE COURT: Yes, but they were not in custody, right?
15         MR. LYONS: No, no. No, they were not in custody, but
16 there was a previous date given to him on the 21st when bond
17 was originally set.
18         So the magistrate at that time, thinking he would be
19 transferred and it would only be 3 to 5 days didn't set a bond
20 and remanded him at that time.
21         The lawyer representing him didn't make a big deal
22 about it because, frankly, even he thought the defendant would
23 be transferred, but that didn't happen.
24         THE COURT: He must not have a lot of removals in
25 Idaho.

1  MR. LYONS: I don't know what they have in Idaho,
2  Judge.
3  THE COURT: Because, you know, this is a little long,
4  but, you know, once your bond is revoked you have got to get
5  transported.
6  MR. LYONS: Right. Right.
7  THE COURT: Well, what is the government's position on
8  bond, Mr. Soto? Can you tell me?
9  MR. SOTO: Yes, Your Honor. The government's position
10 is that the defendant should remain pretrial detained for the
11 reasons the court indicated.
12  I did have a conversation with counsel prior to this
13 hearing because I am standing in for another AUSA, and I wanted
14 to know what the basis of that motion was and what he was
15 proposing.
16  He indicated to me that he wasn't proposing any
17 particular bond, and we both agreed that we would resolve the
18 issue before the court. And as the court indicated, if he
19 wants to contest this, the pretrial detention, he needs to
20 appeal it before the District Court, and I am in full
21 agreement, and that's our position, Your Honor.
22  MR. LYONS: Your Honor, that's not exactly correct. I
23 indicated to him that I would agree to any bond condition that
24 counsel requested, including a surety bond, including a cash
25 bond the family would put up, including electronic monitor,

1  including taking out every telephone in his house, having no
2  contact with even the co-defendants; that if this court were to
3  set a bond of let's say a $100,000 personal surety, that the
4  family has indicated to me that they would amass that fund and
5  put it up, and if the court wanted in addition to a $100,000
6  monetary bond in the registry of the court and wanted in
7  addition to that a small surety bond, that we would, likewise,
8  put that money up, or higher, and I have already contacted a
9  bondsman in Lauderdale with regard to that.  He is waiting for
10  my call.
11          THE COURT:  All right.  Well, the point is, though,
12  since the government is taking the position that pretrial
13  detention is appropriate, I will state a number of things for
14  the record.
15          I have reviewed all of the documents from Idaho.
16  There is a very detailed motion to revoke the bond.
17          There is an indication from the court that this matter
18  was set for hearing; that he listened to the argument of both
19  sides, and the magistrate judge -- I think it is a "she"
20  actually -- revoked the bond based on all of that, which is
21  essentially an order of pretrial detention.
22          The motion for bond does not really, and I understand
23  you may not have seen the previously sealed motion, but it
24  doesn't address what I would perceive to be the primary reason
25  that bond was revoked, which is that the defendant is not a

1  risk of flight or a danger to the community, but whether he is
2  able to abide by the terms and conditions of bond.
3         What we have here is a situation where arguably a new
4  charge of obstruction of justice could be filed.  So we have
5  the commission of a new offense, and I am not so sure that
6  there is much that can be done about that.
7         So, given that the government feels that the detention
8  order should stand, the procedure needs to be followed and you
9  need to file an appeal of this motion or this detention order
10 to Judge Martinez.
11        Once that is done, Judge Martinez may very well refer
12 the matter to me.  You could characterize it, without telling
13 you how to practice law because you have been around for a long
14 time, but as an appeal you could also file a separate motion to
15 revoke the detention order.
16        Either way Judge Martinez can then send it back to me,
17 but the government needs an opportunity to prepare because what
18 would happen is another detention hearing.
19        MR. LYONS:  Your Honor, could I just put something on
20 the record?
21        THE COURT:  Sure.
22        MR. LYONS:  Okay.  If the court will take a look, and
23 it is academic, but the court take a look at the alleged
24 comments that were made by the nephew who works in the
25 establishment in Idaho of the defendant, the court will note

1  that initially the person, then unnamed, indicated that he
2  wanted to cancel the rest of the order.
3          Thereafter, a second call comes in and he says
4  basically, "Check Google."
5          You will see what happened.  Then it says "and," and
6  that's the quotes that I had in my motion.
7          If we were prepared or if we were to proceed today, I
8  have an affidavit from the defendant's lawyer who had gone over
9  the indictment with the defendant.  It became crystal clear who
10 CS-1 and CS-2 were.
11         In addition, Your Honor, with regard to the e-mails,
12 just for edification, all of that stuff was seized from my
13 client's business.
14         So whether or not CS-1 or 2 did or did not destroy
15 evidence, or whether or not this yo-yo, this individual who
16 made the call and said what he said, it wouldn't have mattered,
17 anyway.
18         In addition, Your Honor, now from a standpoint of an
19 obstruction, if they didn't know who CS-1 was or CS-2 was
20 before, which they did, and I have the lawyer's affidavit here,
21 which I could have used at the hearing, he sure does know that
22 now, and it is obvious in the original complaint there are
23 quotations.
24         It becomes really apparent that there are taped
25 conversations, and that these two individuals, who had their

1  own problems, were taping every phone call between the
2  defendant and his co-defendant and them.
3          So, in essence, it is almost like, you know, when you
4  get a domestic violence restraining order in a state court, and
5  they say you shall have no direct or indirect contact with the
6  wife, so to speak, and a friend of the defendant or his brother
7  or cousin contacts the individual, unbeknownst to the
8  defendant.
9          So basically the revocation is predicated upon what
10 some other individual did, not what my client the defendant did
11 in this instance, because it would be ludicrous for him to do
12 that knowing who the informants were, 1, and knowing that the
13 documents they set to destroy are already in the possession of
14 the government.
15         I say that for the record because it frustrates me
16 with regard to it.
17         THE COURT: Well, it wouldn't be the first time a
18 defendant did something really stupid.
19         I mean, I don't think I can infer that he had made all
20 of those calculations in his head before. As I recall, the
21 individual said that he was doing it on the defendant's behalf,
22 but, in any event, it is academic because the judge up there
23 considered the matter and entered an order, and I am happy to
24 reconsider it if that is what Judge Martinez would like me to
25 do, but we need to have the proper witnesses present.

1            MR. LYONS:  Okay.
2            THE COURT:  And all of that.
3            THE COURT:  So you need to jump through the hoops.
4            MR. LYONS:  Okay.  And, for the record, when I get the
5    discovery, I will make a transcript so that there is no
6    miscalculation as to exactly what was said by this other
7    individual.
8            It is referred to in the Boise stuff, so I am assuming
9    that is what it says, although I have not physically seen it.
10           THE COURT:  All right.  You know, as soon as this gets
11   in, I will be happy to set it down and we will reconsider it if
12   that is what the District Judge wants me to do.
13           MR. LYONS:  Okay.  Thank you.
14           THE COURT:  All right.
15           MR. SOTO:  Thank you, Your Honor.
16           THE COURT:  All right.  Court is in recess.
17           THE CLERK:  All rise.
18           (Whereupon the proceedings were concluded)
19
20
21
22
23
24
25

```
 1
 2                    C E R T I F I C A T E
 3        I hereby certify that the foregoing is an accurate
 4   transcription of proceedings in the above-entitled matter.
 5
     APRIL 16, 2013            S/JERALD M. MEYERS
 6   _____          _____
         DATE                   JERALD M. MEYERS, RPR-CM
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```